# No. 17-1946

In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

G. Russell Warnick,

*Appellant*,

v.

Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust,

*Appellee*,

LeClairRyan, A Professional Corporation,

*Intervenor-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

———————————

**COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION
FOR LEAVE TO FILE STATEMENT OF ISSUES AND RECORD
DESIGNATIONS OUT OF TIME**

———————————

E. Duncan Getchell Jr.
Dion W. Hayes
Ryan D. Frei
Kyle R. Hosmer
Ashley P. Peterson

MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone:  804.775.1000
Facsimile:    804.775.1061
egetchell@mcguirewoods.com
dhayes@mcguirewoods.com
rfrei@mcguirewoods.com
khosmer@mcguirewoods.com
apeterson@mcguirewoods.com

*Counsel for G. Russell Warnick*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................1

PERTINENT BACKGROUND.............................................5

ARGUMENT ......................................................................10

I.    STANDARD OF REVIEW ........................................10

II.   WARNICK HAS STANDING TO PURSUE THIS APPEAL....................12

III.  THIS APPEAL IS NOT EQUITABLY MOOT...........................15

IV.   THE INADVERTENTLY DELAYED FILING OF WARNICK'S
      RULE 6 STATEMENT OF ISSUES AND RECORD
      DESIGNATIONS DOES NOT PREJUDICE ANY PARTY TO THIS
      APPEAL ..................................................................19

CONCLUSION...................................................................22

STATEMENT PURSUANT TO LOCAL RULE 27(A) .......................23

CERTIFICATE OF COMPLIANCE...................................23

CERTIFICATE OF SERVICE ...........................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Behrman v. Nat'l Heritage Found.*,
    663 F.3d 704 (4th Cir. 2011) ...............................................................15, 16, 17

*Bell v. Thompson*,
    545 U.S. 794 (2005)...........................................................................................15

*In re Cont'l Airlines*,
    91 F.3d 553 (3d Cir. 1996) .........................................................................15–16

*In re Gordon*,
    1995 WL 860683 (D.D.C. Apr. 13, 1995)........................................................11

*Grasslawn Lodging, LLC v. Transwest Resort Props.*,
    801 F.3d 1161 (9th Cir. 2015) ..........................................................................16

*In re Jenkins*,
    784 F.3d 230 (4th Cir. 2015) ............................................................................11

*LexMark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014).......................................................................................18

*Mac Panel Co. v. Va. Panel Corp.*,
    283 F.3d 622 (4th Cir. 2002) .......................................................................16, 18

*Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*,
    741 F.2d 41 (4th Cir. 1984) ..............................................................................14

*One2One Comms., LLC v. Quad/Graphics*,
    805 F.3d 428 (3d Cir. 2015) .............................................................................16

*In re Pac. Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ............................................................................16

*In re Roberts Farms, Inc.*,
    652 F.2d 793 (9th Cir. 1981) ............................................................................15

*In re Sagamore Partners, Ltd.*,
    610 F. App'x 922 (11th Cir. 2015).....................................................................16

*Segars v. Atl. Coast Line R. Co.*,
  286 F.2d 767 (4th Cir. 1961) ...............................................................14

*In re Serra Builders, Inc.*,
  970 F.2d 1309 (4th Cir. 1992) ...........................................................20

*In re SPR Corp.*,
  45 F.3d 70 (4th Cir. 1995) .................................................................20

*In re Troutman Enter., Inc.*,
  286 F.3d 359 (6th Cir. 2002) .............................................................13

*In re U.S. Airways Grp., Inc.*,
  369 F.3d 806 (4th Cir. 2004) .......................................................16, 18

*United States v. Lavabit*,
  749 F.3d 276 (4th Cir. 2014) .............................................................14

*In re UNR Indus.*,
  20 F.3d 766 (7th Cir. 1994) ...............................................................15

*In re Urban Broad. Corp.*,
  401 F.3d 236 (4th Cir. 2005) .............................................................13

*In re Westwood Cmty. Two Ass'n, Inc.*,
  293 F.3d 1332 (11th Cir. 2001) .........................................................13

**Statutes**

Va. Code § 8.01-35.1 .....................................................................*passim*

**Other Authorities**

Fed. R. App. P. 6 ...........................................................................*passim*

Fed. R. Bankr. P. 9019 .........................................................................6

# INTRODUCTION

On October 14, 2016, after more than six months of "hard-fought" negotiations, the bankruptcy court approved a roughly $20 million settlement between the Liquidating Trustee of the HDL Liquidating Trust and LeClairRyan, resolving at least $250 million in legal malpractice claims. App. 411–12, 1001; *see also* Demand Letter, D. Ct. Dkt. No. 46.[1]  Counsel for the Trustee described the Settlement as "a watershed moment."  App. 1014.  He claimed that "[a]ll the creditors" of HDL "are ecstatic" and gushed that the result was "outstanding, period; extraordinary."  *Id.*

The enthusiasm with which the Trustee described his deal with LeClairRyan ignores fundamental legal defects in the Settlement Agreement and in the bankruptcy court's Order approving it, which the district court then affirmed.  The Settlement Agreement and Order both incorrectly and prematurely provide LeClairRyan with protection under section 8.01-35.1 of the Virginia Code, which "discharge[s]" a settling party "from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death."  Va. Code Ann. § 8.01-35.1(A)(2).

---

[1]  Citations to "App." refer to the appendix filed with the district court on appeal.  *See* Dkt. No. 29, *Warnick v. Arrowsmith*, No. 16–876 (E.D. Va.). Citations to "D. Ct. Dkt." refer to other filings made on the district court's docket.

Section 8.01-35.1, on its face, does not apply to contribution liability arising from purely economic loss like the Trustee's legal malpractice claims. Nor does it entitle a settling party to a premature adjudication of its defenses to contribution liability. To the contrary, the protections of section 8.01-35.1 come into play only after a settling party has been found jointly liable with one or more other parties "for the same injury to a person or property, or the same wrongful death." *Id.* § 8.01-35.1(A), (A)(2).

Despite the statute's plain language, the bankruptcy court entered an Order finding that LeClairRyan is "entitled to . . . and . . . afforded[ ] the full protection" of section 8.01-35.1. App. 950. Worse still, the Order incorporated by express reference the Settlement Agreement between LeClairRyan and the Trustee, which affirmatively "discharge[s] LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor," purportedly pursuant to section 8.01-35.1. App. 962. The Order and Settlement Agreement also contain a number of enforcement mechanisms designed to prevent mere "alleged" joint tortfeasors from asserting contribution claims against LeClairRyan. *See, e.g.*, App. 951 (providing that the bankruptcy court "shall entertain on an expedited basis" any motion "to enforce the Order," which may include "a request for a finding of contempt, the imposition of monetary sanctions, and an award of attorney's fees and costs").

2

Warnick is one such "alleged" joint tortfeasor: the Trustee has filed a nearly 1100-paragraph, 76-count complaint against him (and roughly 100 other defendants), seeking to recover more than $600 million in damages for the same alleged harm caused by LeClairRyan. App. 517–859. Because the bankruptcy court's incorrect and premature application of section 8.01-35.1 improperly stripped Warnick of his right to seek contribution from LeClairRyan, Warnick appealed that decision to the United States District Court for the Eastern District of Virginia.

The Trustee asked the district court to dismiss Warnick's appeal, arguing that (1) Warnick lacked standing to pursue the appeal because he was not "aggrieved" by the bankruptcy court's Order, and (2) the appeal was equitably moot. *See* Mot. Dismiss, D. Ct. Dkt. No. 28. The district court rejected those arguments out of hand. *See* Opinion, D. Ct. Dkt. No. 44 at 4–5; *see also* May 11, 2017 Hr'g Trans., D. Ct. Dkt. No. 43 at 46–47, 50–51.

The district court also expressed serious concerns about the bankruptcy court's premature application of section 8.01-35.1. *See* May 11, 2017 Hr'g Trans., D. Ct. Dkt. No. 43 at 9 (THE COURT: "Let me just tell you all before we start what concerns me about the case most. I am concerned that at some point in the future somebody is going to use the order in this case to say that [section] 8.01-35.1 means that LeClairRyan is off the hook for claims that might come in the future."). Notwithstanding those concerns, however, the district court ultimately affirmed the

bankruptcy court's flawed Order, including its premature, inappropriate, and overreaching application of section 8.01-35.1. *See* Order, D. Ct. Dkt. No. 45. Because that Order continues to impair his legal rights, Warnick has appealed to this Court. *See* D. Ct. Dkt. No. 47.

The Trustee has now moved to dismiss Warnick's appeal again, recycling the same arguments that the district court already deemed meritless. Those arguments hold no more force today than they did when the district court rejected them some two-and-a-half months ago.

As the district court correctly found, Warnick has standing to pursue this appeal: the bankruptcy court speaks through its Order, and that Order directly impairs Warnick's rights by purporting to immunize LeClairRyan from contribution liability under section 8.01-35.1. Although the district court attempted to explain away that legal error in its own opinion and order, it ultimately *affirmed*—rather than modify or vacate—the Order that stripped Warnick of his right to seek contribution against the firm. Warnick therefore remains aggrieved by the bankruptcy court's Order and has standing to pursue this appeal.

In addition, the appeal is not equitably moot. The Settlement Agreement negotiated and executed by the Trustee and LeClairRyan (with input from its insurance carriers), requires the Trustee to hold the settlement funds in a segregated account until the bankruptcy court's order becomes final—if it ever does. If this

Court were to reverse and vacate the Order, the Trustee would return the settlement funds to LeClairRyan's insurance carriers and the parties would return to the "status quo ante . . . as if no settlement had been negotiated or entered into[.]"  App. 987.

Finally, Warnick's inadvertent delay in filing a statement of issues and record designations in the district court does not warrant dismissal under the circumstances. Warnick has not acted in bad faith, and there is no conceivable prejudice to any party.  Warnick thus respectfully requests that this Court grant him leave to file his statement of issues and record designations out of time.

The Trustee's Motion to Dismiss presents nothing more than a premature argument on the merits of Warnick's appeal.  The Court should consider that motion—if at all—only after the parties have fully briefed and argued the appeal. *See* L.R. 27(f) (explaining that motions for dismissal "are reserved for extraordinary cases only," admonishing counsel considering such motions to "carefully consider whether the issues raised on appeal are in fact manifestly unsubstantial and appropriate for disposition by motion," and instructing that such motions "should be made only after briefs are filed").

## PERTINENT BACKGROUND

G. Russell Warnick is a former shareholder, director, and Chief Scientific Officer of Health Diagnostic Laboratory ("HDL").  App. 553.  HDL was a Richmond-based laboratory that specialized in the early detection of cardiovascular

5

disease, diabetes, and related ailments. App. 529. LeClairRyan advised HDL on corporate and regulatory matters from its infancy. App. 938.

One of the subjects on which LeClairRyan provided extensive advice to HDL—the payment of processing and handling fees to healthcare providers for blood-collection services—became the subject of a Department of Justice investigation in 2013. App. 938. In April 2015, HDL settled the DOJ's alleged claims for a commitment to pay $47 million over time. *Id.*

According to the Trustee, HDL's payment of processing and handling fees and the related DOJ settlement were among the "precipitating causes of" HDL's June 2015 bankruptcy filing. App. 411. Accordingly, HDL "pursued claims against LeClairRyan since the early stages of" its bankruptcy case. *Id.*

After roughly six months of negotiations, the Trustee and LeClairRyan executed a Settlement Agreement that resolved HDL's claims against the firm. App. 411–12. The Settlement Agreement required LeClairRyan to pay the HDL Liquidating Trust roughly $20 million. App. 980. In return, the firm received a broad release from all liability to the Trustee. App. 981–83. And, central to this appeal, LeClairRyan also received a purported "discharge . . . from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claims" released by the Trustee under section 8.01-35.1 of the Virginia Code. App. 984–85.

6

On September 1, 2016, the Trustee moved the bankruptcy court to approve the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion"). App. 409. Warnick—and at least 18 other individuals and entities— objected to the 9019 Motion. *See, e.g.*, App. 453, 460, 466, 485.

Warnick's primary point in opposing the Trustee's settlement with LeClairRyan was that it incorrectly and prematurely applied section 8.01-35.1. Specifically, the proposed Order that the Trustee drafted and asked the bankruptcy court to enter found that LeClairRyan was "entitled to . . . and . . . afforded[] the full protection" of section 8.01-35.1. App. 950. The Order also incorporated the Settlement Agreement by reference. *Id.* The Agreement, in turn, provided that LeClairRyan "shall have and be entitled to the benefits and protections available to released parties" under section 8.01-35.1. App. 984–85. And, even more remarkably, the Settlement Agreement stated that it "discharge[d] LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claim released by [the Agreement]." *Id.*

The Order thus purports to immunize LeClairRyan from contribution liability as against persons who are merely "alleged" to share liability with the firm, even though the statute, on its face, affords protection only to persons actually found "liable for" the same injury to person or property or the same wrongful death. *See* Va. Code Ann. § 8.01-35.1. The Order's unlawful and overreaching application of

7

section 8.01-35.1 is compounded by the Settlement Agreement's enforcement mechanisms, which are designed to have a chilling effect on the ability to assert contribution claims against LeClairRyan. For example, the Order and the Settlement Agreement both require the bankruptcy court to entertain "on an expedited basis" any motion filed "to enforce the Order," which may include "a request for a finding of contempt, the imposition of monetary sanctions, and an award of attorney's fees and costs." App. 951. The Settlement Agreement also permits LeClairRyan to seek entry of an order "enjoin[ing] any person or entity from instituting or prosecuting any claim, action or proceeding that interferes with or impairs the releases or other protections conferred by [the] Agreement." App. 964. The Agreement further provides that the Trustee "shall cooperate with LeClairRyan to obtain the dismissal" of any claim asserted against the firm, "including but not limited to *any third-party claim made in an action brought by the Liquidating Trustee*[.]" App. 964 (emphasis added).

At least five different parties identified the error in the Trustee's premature and overbroad application of section 8.01-35.1 and asked that the Order and Settlement Agreement be amended. App. 994, 1010–11, 1022–23, 1025, 1030–31, 1032–34. The Trustee and the bankruptcy court itself also acknowledged the impropriety of pre-adjudicating LeClairRyan's protection from contribution liability under section 8.01-35.1. *See, e.g.*, App. 1009, 1040.

8

Yet the bankruptcy court declined to correct the Trustee's proposed Order. Instead—at the insistence of Trustee's counsel—the Court entered the Order exactly as proposed. *See* App. 971–89; *see also* App. 1033 ("THE COURT: It seems like everyone is saying the same thing here [about section 8.01-35.1], and why can't we just put that in the order then?  MR. KANOWITZ: It wasn't the deal, and I'm not going to get paid, and it's going to blow it up, and that's what they want.  THE COURT: Okay.").

The bankruptcy court also issued a memorandum opinion.  App. 936.  There, the bankruptcy court contradicted and attempted to walk back from the broad, conclusive language of the Order and Settlement Agreement.  In relevant part, the bankruptcy court stated that the Order's reference to section 8.01-35.1 merely "confirm[ed] . . . that the Settlement Agreement qualifies as a covenant not to sue or release," which is only one of several elements that must be satisfied for the statute to apply.  App.  947; *see also id.* (stating that "[t]he Liquidating Trustee [did] not seek, nor [was] he getting[,] a preadjudication of the impact of § 8.01-35.1").

On October 28, 2016, Warnick timely appealed the bankruptcy court's Order and "all adverse orders, rulings (evidentiary or otherwise), decrees, opinions, and judgments leading up to, merged into, or included within" it.  *Id.* at 968.  Although the district court expressed reservations about the bankruptcy court's improper pre-adjudication of LeClairRyan's entitlement to protection under section 8.01-35.1, it

9

ultimately *affirmed* the Order stripping Warnick of his right to seek contribution from the firm. The district court attempted to ameliorate the flawed Order by explaining that it "does not pre-adjudicate the applicability of Virginia Code § 8.01-35.1 to any claims that [Warnick] or anyone else may one day bring against LeClairRyan." D. Ct. Dkt. No. 45 at 2.

No amount of explanation—whether from the bankruptcy court or the district court—can repair the damage caused by the bankruptcy court's Order, which affirmatively and unequivocally "afford[s]" LeClairRyan "the full protection" of section 8.01-35.1 and "discharges LeClairRyan from all liability for contribution to any other person alleged or found liable [to HDL] as a joint tortfeasor . . . ." App. 950, 962. Because that Order, on its face, purports to eliminate Warnick's ability to pursue contribution claims against LeClairRyan, Warnick has now appealed to this Court. *See* D. Ct. Dkt. No. 47.

<u>ARGUMENT</u>

I. STANDARD OF REVIEW

As an initial matter, it bears mentioning that the Trustee misapprehends the standard of review that this Court will apply in deciding Warnick's appeal. He suggests that a "clearly erroneous" standard is appropriate, and states that Warnick must "show that the 'entire evidence' supporting the 9019 Order should leave this

reviewing court with a definite and firm conviction that the lower court committed a mistake." Dkt. No. 16-1 at 3–4.[2]

Not so. Warnick does not challenge the Settlement in its entirety. Nor does he argue on appeal that the Settlement provided an unreasonably small return to the Liquidating Trust. Rather, Warnick has appealed discrete legal and evidentiary rulings by the bankruptcy court. *See* App. 990–91. Binding precedent requires this Court to "apply the same standard of review that the district court applied when it reviewed the bankruptcy court's decision." *In re Jenkins*, 784 F.3d 230, 234 (4th Cir. 2015). Accordingly, "the legal conclusions of both the district court and the bankruptcy court are reviewed de novo and the factual findings of the bankruptcy court are reviewed for clear error." *Id.* (internal alteration omitted).

By insisting that Warnick must rebut the "entire evidence" supporting the Settlement, the Trustee fails to appreciate that the bankruptcy court's approval of the Settlement Agreement—which the district court affirmed—required the bankruptcy court to draw certain legal conclusions. One of those conclusions—that LeClairRyan is entitled to and afforded protection under section 8.01-35.1— incorrectly and wrongfully disposes of Warnick's valuable legal rights. This Court

---

[2]  The Trustee appears to retreat from this position later in his brief, where he correctly notes that "the legal conclusions of both the district court and the bankruptcy court are reviewed de novo[.]" Dkt. No. 16-1 at 7.

11

reviews that legal conclusion de novo. *See, e.g.*, *In re Gordon*, No. 94–2684, 1995 WL 860683, at *3 (D.D.C. Apr. 13, 1995).

While a general appeal of a bankruptcy trustee's entry into a settlement may be subject to a less searching review, the justifications for that deference have no application where a litigant challenges a legal conclusion of the bankruptcy court. A bankruptcy court's familiarity with a debtor's affairs usually means that it is better placed to weigh the costs and benefits to the debtor of settling, rather than litigating, certain claims. But the bankruptcy court has no special insight on purely legal questions, so its ruling in that context commands no special deference. To conflate the two types of rulings such that the bankruptcy court's legal conclusions are reviewed under a "clear error" or "abuse of discretion" standard, as the Trustee suggests, would render this Court powerless to correct legal errors like those committed below.

## II. WARNICK HAS STANDING TO PURSUE THIS APPEAL

In his motion to dismiss, the Trustee primarily contends that Warnick lacks standing to appeal the bankruptcy court's Order to this Court. The district court rejected this argument out of hand, *see* Dkt. No. 44 at 4, and it should not detain this Court for long either. The Trustee does not contest that Warnick had standing to object to the 9019 Motion in the bankruptcy court. Dkt. No. 16-1 at ¶ 16. Nor does he argue that immunizing LeClairRyan from contribution liability under section

8.01-35.1 does not affect Warnick's rights. *See, e.g.*, *id.* ¶ 21. Instead, the Trustee claims only that Warnick lacks appellate standing because the Order did not—despite its unambiguous and unequivocal language to the contrary—immunize LeClairRyan from contribution liability. *Id.* ¶¶ 21–22.

The Fourth Circuit has held that a party has standing to pursue an appeal where he is a "person aggrieved" by a bankruptcy court order. *In re Urban Broad. Corp.*, 401 F.3d 236, 243–44 (4th Cir. 2005). A person is aggrieved "when th[e] order diminishes [his] property, increases [his] burdens or impairs [his] rights." *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2001) (internal quotation marks omitted); *see also* D. Ct. Dkt. No. 44 at 4 (the district court's one-paragraph rejection of the Trustee's standing argument, in which the court explains that a bankruptcy appellant has standing if he has "'a direct and substantial interest *in the question being appealed*'") (emphasis in original).

Warnick indisputably meets the "person aggrieved" standard. By purporting to incorrectly and prematurely immunize LeClairRyan from contribution liability, the bankruptcy court diminished Warnick's rights against the firm. The Trustee's position to the contrary rests on his incorrect belief that the contradictory statements made by the bankruptcy court and the district court somehow correct the Order's reversible error. They do not.

As described above, the Order provides that LeClairRyan is "entitled to . . . and . . . afforded the full protection" of section 8.01-35.1.  App. 950.  It also incorporates the Settlement Agreement, which explicitly "discharge[s] LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor" for the claims released therein pursuant to section 8.01-35.1.  App. 962.  These provisions, on their face, purport to eliminate Warnick's ability to seek contribution against LeClairRyan.  Indeed, in light of the Settlement Agreement's severe enforcement provisions, Warnick risks dismissal of his claim, monetary sanctions, or a finding of contempt if he even attempts to pursue his valid legal rights.

The Trustee attempts to qualify the Order's clear and unambiguous language by citing to statements made elsewhere by the bankruptcy court and the district court. Dkt. No. 16-1 at ¶¶ 20–21  But because a court speaks through its orders, not through its written or oral opinions, neither court's pronouncements about the impropriety of pre-adjudicating LeClairRyan's contribution immunity have any legal effect: the Order renders those contradictory statements meaningless.  *See, e.g.*, *United States v. Lavabit*, 749 F.3d 276, 289 (4th Cir. 2014) ("When the terms of a judgment conflict with either a written or oral opinion or observation, the judgment must govern."); *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 741 F.2d 41, 44 (4th Cir. 1984) ("Courts must speak by orders and judgments, not by opinions, whether written or oral, or by chance observations or expressed intentions made by

14

courts during, before or after trial, or during argument."); *Segars v. Atl. Coast Line R. Co.*, 286 F.2d 767, 770 (4th Cir. 1961) ("It is the formal order that determines the action of the court rather than some chance statement or observation made by the Judge during the course of oral arguments."); *see also Bell v. Thompson*, 545 U.S. 794, 805 (2005) ("'Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.'").  In other words, the bankruptcy court's Order, as affirmed by the district court, controls.  Because that Order adversely affects his rights, Warnick is aggrieved by and has standing to appeal it.

## III.  THIS APPEAL IS NOT EQUITABLY MOOT

Equitable mootness is a recent legal doctrine of limited application that receives frequent criticism.  It allows a court to dismiss an appeal "when it becomes impractical and imprudent to upset [a] plan of reorganization at a late date." *Behrman v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011).  Equitable mootness arose in 1980s bankruptcy cases in the plan-confirmation context.  *See In re Roberts Farms, Inc.*, 652 F.2d 793, 795–98 (9th Cir. 1981) (dismissing appeal from confirmed plan with "many intricate and involved transactions").  Since then, Judge Easterbrook has banished the term from the Seventh Circuit's legal lexicon. *In re UNR Indus.*, 20 F.3d 766, 769 (7th Cir. 1994).  Subsequently, then-Judge Alito wrote that equitable mootness:

> does not present a jurisdictional question; [the court] is not required to consider it before proceeding to the merits; and even if [the court]

15

> find[s] that it is applicable, it does not necessarily dictate that [a court] dismiss [an] appeal . . . . Rather [the court] retain[s] the ability to craft, or to instruct the district or bankruptcy courts to craft, a remedy that is suited to the particular circumstances of the case.

*In re Cont'l Airlines*, 91 F.3d 553, 569–71 (3d Cir. 1996) (Alito, J., dissenting). More recently, Judge Krause called for the Third Circuit to reconsider its use of the "legally ungrounded and practically unadministrable 'judge-made abstention doctrine'" of equitable mootness. *One2One Comms., LLC v. Quad/Graphics*, 805 F.3d 428, 538–54 (3d Cir. 2015) (Krause, J., concurring). The Fifth, Ninth, and Eleventh Circuits have all restricted the doctrine. *See, e.g.*, *In re Sagamore Partners, Ltd.*, 610 F. App'x 922, 929 (11th Cir. 2015) (declining to dismiss appeal where the court could fashion effective relief); *Grasslawn Lodging, LLC v. Transwest Resort Props.*, 801 F.3d 1161, 1167–73 (9th Cir. 2015) (reversing dismissal of appeal on equitable mootness grounds); *In re Pac. Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009) (noting courts apply equitable mootness "with a scalpel rather than an axe").

For its part, this Court invokes equitable mootness sparingly. *See Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). As a general matter, the Court hesitates to dismiss an appeal as equitably moot absent a showing that the requested relief would require "countless transactions" to be unwound. *Behrman*, 663 F.3d at 713–14 (denying dismissal where debtor had not substantially consummated its plan); *In re U.S. Airways Grp., Inc.*, 369 F.3d 806, 810 (4th Cir. 2004) (affirming dismissal of appeal as equitably moot where the debtor had

16

"implemented its reorganization plan by completing hundreds of transactions with third parties" and emerged from bankruptcy).

This Court considers four factors when deciding whether to dismiss an appeal as equitably moot. *Behrman*, 663 F.3d at 713. It asks: (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties. *Id.* None of those factors supports a finding of equitable mootness here.

Most importantly, the Settlement Agreement has not been substantially consummated. To the contrary, the Trustee and LeClairRyan deliberately engineered the Settlement Agreement to be ineffectual until the Trustee obtains a final order approving it, if he ever does. That is, although LeClairRyan has paid the Trustee roughly $20 million, the Trustee must hold those funds in a segregated account and cannot access them for any purpose unless and until the bankruptcy court's Order becomes final. App. 987. If the Order fails to become final, the Trustee must repay the funds to LeClairRyan's insurers, with parties returning "to the status quo ante[.]" *Id.* Thus, if this Court reverses the Order on account of the

17

legal and evidentiary errors committed below, the Settlement Agreement unwinds itself automatically.

In other words, the Settlement Agreement that the Trustee so carefully negotiated ensures that the bankruptcy court will not have to "reconstruct[] . . . Humpty Dumpty," as he remains wholly intact by self-executing provisions of the Settlement Agreement. *Mac Panel*, 283 F.3d at 626. Indeed, the Settlement Agreement even required the extension of a tolling agreement to ensure that the Trustee's failure to obtain a final order approving the Agreement would not adversely affect his claims against LeClairRyan. App. 987–88. Because the Settlement Agreement stays its own implementation during pendency of any appeal of the Order, Warnick did not need to seek a stay of the Order. For that same reason, Warnick's requested relief will not impair the rights of any third parties. *Contra U.S. Airways Grp.*, 369 F.3d at 810.

Adopting the Trustee's notion of equitable mootness would render nearly every bankruptcy court order unreviewable. Specifically, the Trustee appears to argue that merely approving a settlement automatically makes the agreement so complex that an appellate court cannot review its approval. Given the Court's "virtually unflagging" obligation "to hear and decide cases within its jurisdiction," that position is untenable. *LexMark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. ___, 134 S. Ct. 1377, 1386 (2014). Equitable mootness is, at bottom, an

equitable doctrine.  Applying it to bar Warnick from appealing an order that purports to dispose of his valuable contribution rights would be unduly harsh, unfounded, and inequitable.

## IV.   THE INADVERTENTLY DELAYED FILING OF WARNICK'S RULE 6 STATEMENT OF ISSUES AND RECORD DESIGNATIONS DOES NOT PREJUDICE ANY PARTY TO THIS APPEAL.

Rule 6 of the Federal Rules of Appellate Procedure governs certain non-jurisdictional, procedural requirements related to bankruptcy appeals.  In relevant part, Rule 6 requires a party appealing from a district court's decision on a bankruptcy appeal to file with the district court clerk "a statement of the issues to be presented on appeal and a designation of the record to be certified and made available to the circuit clerk" within fourteen days of filing a notice of appeal.  Fed. R. App. P. 6(b)(2)(B)(i).

Due to an unintentional misunderstanding regarding the intended purpose and effect of the Court's Docketing Order, Dkt. No. 2, Warnick did not make this filing within the time prescribed by Rule 6.  Warnick therefore respectfully requests that this Court grant him leave to file in the district court the attached Statement of Issues and Items to be Included in the Record on Appeal.[3]  *See* **Exhibit A**.

---

[3]   In the interest of preventing additional delay, Warnick will lodge the attached **Exhibit A** with the district court and serve it on the Trustee and LeClairRyan simultaneously with the filing of this motion.

This Court has held that, when considering whether to allow a late non-jurisdictional filing in a bankruptcy appeal, a court must "consider and balance all relevant factors," including "the good faith of the appellant" and "possible prejudice to the other parties." *In re SPR Corp.*, 45 F.3d 70, 74 (4th Cir. 1995) (reversing dismissal of bankruptcy appeal for failure to timely file record designations where district court failed to weigh all relevant factors). The court must also "bear in mind that, although dismissal is an option, less drastic alternatives must be considered." *Id.*; *see also id.* at 73 ("[T]he sanction of dismissal for failure to comply with a non-jurisdictional, procedural guideline . . . is a harsh sanction which a [ ] court must not impose lightly.") (quoting *In re Serra Builders, Inc.*, 970 F.2d 1309, 1311 (4th Cir. 1992)). As this Court has repeatedly explained, "[j]ustice is better served when controversies are decided on their merits rather than procedural technicalities." *In re SPR Corp.*, 45 F.3d at 73 (citation omitted).

Warnick's inadvertent delay in filing his Rule 6 statement of issues and record designations does not warrant dismissal here. Warnick has not acted in bad faith, and the Trustee has not pointed to anything suggesting otherwise. More importantly, there is no conceivable prejudice to any party under the circumstances. Both the Trustee and LeClairRyan were fully apprised of the issues on appeal when Warnick timely filed his docketing statement in this Court on August 31, 2017. *See* Dkt. No. 12. Because the issues on appeal are identical to those presented below, the record

20

will also be largely identical, with the addition of (1) LeClairRyan's motion to intervene and related filings; (2) the Trustee's motion to dismiss and related filings; (3) the parties' merits briefing and the transcript of the May 11, 2017 argument; and (4) the district court's order and opinion. *See* **Exhibit A**. None of those additions is unexpected, unusual, or controversial.[4] Finally, there is no prejudice because the joint appendix is not due to be filed until November 1, 2017—a full month from now.

Under these circumstances, Warnick's inadvertent delay in filing the record designations and statement of issues required by Rule 6 does not warrant dismissal of his appeal. *See, e.g.*, *In re CPDC, Inc.*, 221 F.3d 693, 699–700 (5th Cir. 2000) (reversing dismissal of bankruptcy appeal for failure to timely make a non-jurisdictional filing, explaining that dismissal is unwarranted where there is no prejudice to appellees and no evidence of "obstinately dilatory conduct" resulting in delayed adjudication of the appeal); *Carroll v. Farooqi*, No. 3:12-cv-804, 2013 WL 230372, at *4 (N.D. Tx. Jan. 22, 2013) (refusing to dismiss bankruptcy appeal for delayed filing of statement of issues where "[n]one of the briefing deadlines [were]

---

[4] The advisory committee notes to Fed. R. App. P. 6(b)(2)(B)(i) explain that the rule is intended to address situations where "a party may well narrow the focus of its efforts on the second appeal and a redesignation of the record may eliminate unnecessary material," or where an "independent error in the immediate appeal . . . may be assigned in the court of appeals." Fed. R. App. P. 6 advisory comm. nn. (1989). This appeal does not involve either of those circumstances.

affected" and there was "no evidence that [appellee's] ability to respond to the appeal had been impaired in any way"). Warnick thus respectfully requests that this Court grant him leave to file out of time the statement of issues and record designations required by Rule 6. *See* **Exhibit A**.

<u>CONCLUSION</u>

For the reasons described above, the Court should deny the Trustee's Motion to Dismiss and also grant Warnick leave to file out of time the record designations and statement of issues required by Fed. R. App. P. 6.

Dated: October 1, 2017                    Respectfully submitted,
      Richmond, Virginia

          */s/ Ryan D. Frei*
          E. Duncan Getchell Jr. (VSB No. 14156)
          Dion W. Hayes (VSB No. 34304)
          Ryan D. Frei (VSB No. 70996)
          Kyle R. Hosmer (VSB No. 86417)
          MCGUIREWOODS LLP
          Gateway Plaza
          800 East Canal Street
          Richmond, VA 23219
          Telephone:  804.775.1000
          Facsimile:   804.775.1061
          egetchall@mcguirewoods.com
          dhayes@mcguirewoods.com
          rfrei@mcguirewoods.com
          khosmer@mcguirewoods.com

          *Counsel for G. Russell Warnick*

## STATEMENT PURSUANT TO LOCAL RULE 27(A)

Counsel for Appellant has conferred with counsel for Appellees regarding the filing of this response brief, including the request for affirmative relief made pursuant to Fed. R. App. P. 27(a)(3)(B). Counsel for LeClairRyan has stated that it takes no position on Warnick's request. Counsel for the Trustee has stated that he opposes the request and intends to file a response in opposition.

Dated: October 1, 2017

                                        /s/ *Ryan D. Frei*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2), because, excluding the accompanying documents authorized by Fed. R. App. P. 27(a)(2)(B), the response contains 5150 words.

This response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

Dated: October 1, 2017

                                        /s/ *Ryan D. Frei*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2017, I electronically filed the foregoing response with the Clerk of this Court using the CM/ECF System, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users.

                                        /s/ *Ryan D. Frei*